Per Curiam:
This case was referred to Trial Commissioner W. Ney Evans with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on July 5, 1966. Exceptions to the commissioner’s findings, opinion and recommendation for conclusions of law were filed by plaintiffs. The case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiffs are, therefore, not entitled to recover and the petition is dismissed.
Commissioner Evans’ opinion,* as modified by the court, is as follows:
By this action plaintiffs seek to recover $1,512.32 representing a deficiency in income taxes assessed for the calendar year 1955 (and duly paid) upon the disallowance of a deduction by taxpayers of $7,980.66 in expenses incurred during that year in the prosecution of an action for declara *355 tory judgment to invalidate the will of Arthur L. Bliss, half brother of plaintiff Alonzo O. Bliss.
The issue is whether or not the expenses were incurred “for the management, conservation, or maintenance of property held for the production of income” within the meaning of section 212 of the Internal Revenue Code of 1954. The plaintiff, Alonzo O. Bliss, was not engaged in a trade or business in 1955, wherefore section 162 of the Code has no application.
Plaintiffs would equate the expenses to those incurred in proxy contests, as in Graham v. Commissioner of Internal Revenue, 326 F. 2d 878 (4th Cir. 1964), and Surasky v. United States, 325 F. 2d 191 (5th Cir. 1963) ,[1]
Defendant contends that the expenses arose out of (1) the attempt by plaintiff Alonzo O. Bliss to acquire an inheritance under the intestacy laws, wherefore the expenditures were capital in nature, as in Manufacturers Hanover Trust Co. v. United States, 160 Ct.Cl. 582, 312 F. 2d 785, cert. denied, 375 U.S. 880 (1963); Wilson v. Commissioner of Internal Revenue, 37 T.C. 230 (1961), aff'd per curiam, 313 F. 2d 636 (5th Cir. 1963) ; and Spangler v. Commissioner of Internal Revenue, 323 F. 2d 913 (9th Cir. 1963); and (2) his perseverance in disagreement with and hostility toward his brother, wherefore the expenditures were personal in nature, as in United States v. Gilmore, 372 U.S. 39 (1963).
The finding of ultimate fact[2] sustains defendant’s first contention and is dispositive of the case.
The subsidiary facts may be summarized as follows:
In 1910, Alonzo O. Bliss, Sr., father of the plaintiff Alonzo O. Bliss, owned a number of apartment houses in the District of Columbia. In that year the mother of plaintiff suffered a mental breakdown, in consequence of which her husband thought she might become incompetent and therefore unable to participate with him in real estate transfers, which were essential to the maintenance of his business. The senior Bliss thereupon (in 1911) transferred his real estate holdings to *356 a Massachusetts trust in return for bonds (in the face amount of $2 million) which he then distributed among his children. He also gave some of the bonds to his wife.
The senior Bliss had four children, two sons and two daughters, by a previous marriage. The present plaintiff was the only child of the second marriage. He was 6 years of age when the trust (known as Bliss Properties) was created.
Shortly after the trust was created, a sister of plaintiff’s mother instituted court action to have it declared illegal, on the ground that Mrs. Bliss was incompetent when the real estate transfers were executed. While the suit was unsuccessful, it remained pending for quite some time.
In 1920, one of the senior Bliss’ sons by his first marriage, Arthur, succeeded in ousting the other son, Harry, from the management of Bliss Properties and in obtaining the appointment of James McD. Shea as manager. For more than 30 years thereafter, Arthur Bliss and Mr. Shea worked closely together in the management of the trust properties.
Throughout most of this time, in fact from the maturity of Alonzo O. Bliss, Jr., in the late 1920’s, he was a consistent critic of the trust and its management. Several court actions were instituted by him based upon allegations of mismanagement.
Arthur L. Bliss died in 1953, leaving a will whereby an estate worth some $600,000 (consisting primarily of the bonds of Bliss Properties) was placed in trust for the payment of income to his widow during her life, with the corpus thereafter to be divided between two nephews (the sons of a sister who had predeceased him).
The will specified remainders over in the event either or both nephews should not survive the widow. The court action wherein the expense now sought to be deducted was incurred was an action filed by the plaintiff Alonzo O. Bliss for a declaratory judgment to invalidate the will on the ground that the remainders over violated the rule against perpetuities. The trial court granted the defendants’ motion for summary judgment, and its decision was upheld on appeal.[3]
*357 If taxpayer bad prevailed in the will contest, his brother would have been deemed to have died intestate and taxpayer would have inherited one-sixth of the estate, worth approximately $100,000.
The instant case is presented here on the assumption that, if taxpayer had succeeded in gaining the inheritance, the estate would have been divided in kind and taxpayer would have received Bliss Properties bonds in an amount representing some 3.67 percent of the face amount of bonds then outstanding. Taxpayer’s contention is that the additional bonds, combined with the 17.56 percent he already held, would have increased his holdings to more than 20 percent of the bonds outstanding; that with the 20 percent plus in his control he would have had sufficient leverage to force the termination of the trust; that upon termination of the trust, the Federal corporate income tax would no longer have been applicable; wherefore, his income would have been increased.[4]
The only conclusion the evidence as a whole will support is that the expenses were incurred in pursuit of an increment of capital.
FindiNGs of Fact
1. (a) The plaintiff, Alonzo O. Bliss[1] (sometimes hereinafter referred to as Alonzo O. Bliss, Jr.), was bom September 3,1905, the only child of Alonzo O. Bliss, Sr., and Eva Jackson Bliss.
(b) In 1910, plaintiff’s mother, Eva Jackson Bliss, suffered a mental breakdown which appeared to her husband to threaten to render her incompetent.[2]
(c) On December 20, 1911, plaintiff’s father, Alonzo O. Bliss, Sr., transferred certain real estate (consisting primarily of apartment houses in Washington, District of Columbia) to a Massachusetts trust under an agreement which was duly recorded among the land records of the District of *358 Columbia. The trust thereupon issued to its founder various series of bonds in the face amount of $2 million. These bonds were distributed by the founder among his children who, at that time, numbered five, being four by a previous marriage, and plaintiff. Two of the bonds (of $20,000 denomination each) were given to Eva Jackson Bliss.
(d) The children of Mr. Bliss, Sr., by his earlier marriage to Catherine Emma Kingman, were two sons, Harry and Arthur L., and two daughters, Bertha and Marcia.
(e) The trust, under the name of Alonzo O. Bliss Properties (hereinafter shortened to Bliss Properties) was vested in three named trustees and was established “for the period of thirty years from * * * date, unless * * * sooner terminated * * *” by majority vote of the bondholders. During the life of the trust the bondholders had the right to vote “to the extent of the bonds held * * *” upon certain management policies.
2. (a) During the early years of the trust (up to 1920), Harry Bliss was manager of the trust properties and of a medical company owned by Alonzo O. Bliss, Sr.
(b) In 1912, a sister of Mrs. Eva Jackson Bliss filed a court action charging that the trust had been created illegally. In consequence of it, a guardian ad litem was appointed for plaintiff, then a child of seven. The case went on for several years.
(c) Plaintiff’s share of the trust included 266 bonds of $1,000 denomination each). In 1915, these bonds had a basis for Federal income tax purposes of $208,810.
(d) In 1920, Arthur L. Bliss succeeded in ousting his brother Plarry from the management, and secured the appointment of J ames McD. Shea as manager of the trust properties. The two worked together closely for the remainder of Arthur’s life, and Mr. Shea has continued as manager down to the time of the present litigation. Harry Bliss, on the other hand, is not mentioned in the evidence in any connection after 1920. It is to be inferred that he died sometime prior to 1950, leaving no issue.
3. (a) From the time of plaintiff’s capacity as a mature man (in the late 1920’s), he was continually at odds with his brother Arthur (and through him with Mr. Shea) over the *359 management of the trust. In a court action plaintiff obtained an injunction preventing his brother from paying unearned salaries to himself and his two sisters. Over the years other suits were filed by plaintiff, based upon alleged mismanagement. As a result of one of the suits plaintiff obtained appointment of himself as one of the three trustees. Through his course of action, plaintiff established himself as the one consistently dissident bondholder.
(b)On October 20,1939, the then trustees of Bliss Properties and the holders of all of the then outstanding bonds[3] entered into an agreement of indenture extending the basic provisions of the original trust for another 30 years, or until January 1, 1972, including the provision whereby the trust could be terminated by majority vote of the bondholders.
4. (a) In 1940, plaintiff was divorced from Margaret V. Bliss. There were two children of the marriage, Alonzo O. Bliss, III, and Barbara Ann Bliss. Plaintiff’s marriage to Dawn H. Bliss followed his divorce from Margaret Y. Bliss.
(b) As part of a separation agreement dated March 13, 1940, plaintiff transferred $134,000 in bonds [4] of Bliss Properties to an irrevocable trust for payment of income to Margaret V. Bliss and their children. Taxpayer retained no beneficial interest in this trust. During the times primarily material to this action (1951-1955), these bonds were voted by the National Savings and Trust Company (a Washington bank).
(c) Arthur L. Bliss died on May 27, 1953. He was survived by his widow, Edith Bennie Bliss. They had no children. However, on June 30, 1941, he had created a trust for his wife into which he had placed $86,000 in Bliss Properties bonds. Taxpayer had no beneficial interest in these bonds, which were voted by Edith Bennie Bliss, although the trustees were James McD. Shea and the National Savings and Trust Company.
(d) Bertha Bliss predeceased her brother Arthur. She had married Dean E. Brown and they had three children: *360 Katherine Brown Kichardson, Clarence G. Brown, and Dean E. Brown, Jr. The children (who survived their uncle) received from their mother $116,666.66, each, in bonds of the Bliss Properties, which they severally voted.
(e) Marcia Bliss married Tracy Lay. They had no children. She survived her brother Arthur. On June 14,1945, a separate trust was created for her and her husband, into which were placed Bliss Properties bonds of $300,000, which were voted by the National Savings and Trust Company and Clarence G. Brown.
5. (a) On July 11,1951, the National Savings and Trust Company was appointed sole trustee of Bliss Properties.
(b) Bliss Properties was and is engaged in business in the District of Columbia. Its principal activity is and for many years has been the renting of a number of apartment buildings owned by it in the Metropolitan Washington area. In 1955, Bliss Properties owned about 20 apartments, most of which it had held for a number of years. The trust has reported and continues to report its income for Federal income tax purposes as an association taxable as a corporation.
(c) After the appointment of the National Savings and Trust Company as sole trustee for Bliss Properties, James McD. Shea continued as manager, and the brothers Brown, Clarence G., and Dean E., Jr., were employed in the management of the properties. During the period 1950-1955, there were six full-time clerks and secretaries employed in the management office, while employees outside the office numbered more than 200.
6. (a) Plaintiff’s only specific complaint of actions by the National Savings and Trust Company, after it became sole trustee, was his assertion that the bank carried on deposit without interest funds of Bliss Properties in excess of $100,000.
(b) His charges of mismanagement by his brother, Arthur, and Mr. Shea, were more numerous, including allegations that Arthur had over the years neglected the related medical company which had theretofore made money; that Arthur had paid unwarranted salaries to himself and two sisters; that Arthur had taken $100,000 from the business, in addition to advances to himself in excessive amounts as interest-free *361 loans; and that Arthur had invested accumulated funds of Bliss Properties in the stock market.
(c) Plaintiff was critical of James McD. Shea for allocating to himself a salary of $25,000 as manager of Bliss Properties, and for having used funds of the trust to buy into a title company from which Mr. Shea received a further salary of $15,000.
(d) By 1951, plaintiff had begun to center his criticism of the trust upon the payment by it of Federal income taxes as if it were a corporation. He was convinced that means could be found to relieve the trust of this obligation, and that elimination of corporate Federal income taxes would redound to the benefit of all of the bondholders, himself included.
(e) On May 29, 1952, plaintiff (through his attorney) wrote to the Bliss Properties to suggest that the assets of the trust be liquidated in order to eliminate the Federal corporate tax. The bank (National Savings and Trust Company) conferred with its counsel and thereafter submitted a copy of the suggestion together with its own transmittal letter[5] to all of the bondholders of Bliss Properties. No action was taken at that time by the bondholders in response to the proposal submitted by plaintiff.
(f) None of the other bondholders j oined plaintiff or made common cause with him in his efforts to censure the management or to direct it into different courses until he raised the question of avoiding the Federal corporate income tax. Even then, although two of the Brown children expressed some interest in his proposals, none of the bondholders ever voted with him on the proposition.
7. (a) Arthur L. Bliss died (March 27,1953) testate, owning 335 bonds of Bliss Properties having a face value of $335,000. These bonds comprised virtually all of his estate. Their market value at the time of his death was approximately $600,000. His will devised the estate to trustees (James McD. Shea and the National Savings and Trust Company) in trust' to pay the net income to his widow, Edith Bennie Bliss, during her life, and upon her death to divide *362 the corpus between his two nephews, the brothers Brown, with remainders over in the event either or both of his nephews should predecease the widow.
(b) As of January 1,1955, the outstanding bonds of Bliss Properties were held as follows:
Alonzo O. Bliss, Jr. $306, 000.00
For himself_-_ $266, 000.00
As committee for the person and estate of Eva Jackson Bliss- 40, 000.00
National Savings and Trust Company-434,000. 00
As surviving trustee for Margaret V. Bliss_ 134, 000. 00
As trustee for Marcia Bliss Lay_ 300,000.00
James McD. Shea and National Savings and Trust Company_ 421, 000. 00
As 'trustees for Edith Bennie Bliss 86,000.00
As trustees under the will of Arthur L. Bliss_ 335,000.00
Katherine B. Richardson-116, 666. 67
Clarence G. Brown_ 116, 666. 67
Dean E. Brown, Jr_ 116, 666. 66
James McD. Shea_ 4,000.00
Total_ $1,515,000.00
(c) Following are the translations of the foregoing figures into percentages:
Alonzo O. Bliss, Jr_:- 20.197
For himself_ 17. 557
As committee_ 2. 640
Nat’l Sav. and Trust Co_ 28. 646
As trustee for:
Margaret V. Bliss_ 8. 844
Marcia Bliss Lay_ 19. 802
James McD. Shea and Nat’l Sav. and Trust Co- 27. 788
As trustee for:
Edith Bennie Bliss_ 5. 676
Arthur L. Bliss_ 22.112
Katherine B. Richardson_ 7. 700 7. 700
Clarence G. Brown_ 7.700 7. 700
Dean E. Brown, Jr_ 7.700 7. 700
James McD. Shea_ 0.264 0.264
99.995 99.995
*363 8. (a) On. January 11,1955, taxpayer filed a complaint in the United States District Court for the District of Columbia for a declaratory judgment to invalidate the will of Arthur L. Bliss on the ground that the remainders over specified therein violated the applicable rule against perpetuities.
(•b) The District Court action was heard on motions, and the complaint was dismissed by an order entered June 8, 1955. The action of the District Court was affirmed on appeal on March 1,1956.[6]
(c) There was sufficient merit in the case, in legal technicality, to preclude characterization of it as frivolous.
9. (a) If plaintiff’s contention in the will suit had been upheld and the will declared invalid, Arthur L. Bliss would have been deemed to have died intestate, whereupon his estate would have been distributed under the laws of the District of Columbia: to the widow, one-half; to the plaintiff (as half brother inheriting the same as a brother of the full blood), one-third of the remaining half or three-eighteenths of the whole;[7] to the surviving sister, Marcia Bliss Lay, one-third of one-half or three-eighteenths of the whole; and to the niece and nephews (children of the deceased sister), three-eighteenths of the half, or one-eighteenth of the whole to each.
(b) Plaintiffs’ case is here presented on the assumption that distribution of the estate of Arthur L. Bliss under the intestacy laws of the District of Columbia would have been made in kind.
(c) Such a distribution would have altered the holdings and percentages shown in finding 7 (c) as follows:

*364

10. (a) By 1955, the properties owned by the trust bad increased in value substantially, wherefore the value of the bonds (based on the market values of the properties minus indebtedness and other liabilities) was substantially in excess of their basis value in the hands of the bondholders for Federal income tax purposes.
(b) Following are the averages, for the years 1951 through 1954, of figures derived from the financial statements of Bliss Properties for those 4 years:
Book value of assets_$4, 065, 404. 00
Taxable income_ 260, 395. 51
Income taxes (Federal and D.C.)_ 132,543.12
Income after taxes_:- 127, 852. 39
Distributions to bondholders_ 100, 746. 75
(c) Translated into percentages: (1) Taxable income was 6.4 percent of the book value of assets; [8] (2) income taxes were 50.9 percent of taxable income; (3) distributions to bondholders were 78.8 percent of income after taxes, 2.47 percent of book value, and 6.65 percent of the face value of the bonds.
11. (a) In connection with his action for declaratory judgment, plaintiff incurred legal fees and expenses in the amount of $7,980.66, itemized as follows:
*365 Lee O. Robinson_$4, 914.30
Expenses_ 1,539. 75
Scott P. Orampton___ 670.95
J. Allen Smith_ 375.00
Cleary, Gottlieb & Steen_ 480.66
Total___§7,980. 66
(b) The fees and expenses so incurred were reasonable in amount.
'12. Plaintiff’s mother, Eva Jackson Bliss, died on December 19,1956, at which time he inherited from her additional bonds of the Bliss Properties having a face value of $40,000 and a fair market value as determined for Federal estate tax purposes of $60,000.
13. (a) Asa result of plaintiff’s continuing insistence upon liquidation of the trust, Bliss Properties, on March 12,1957, employed a competent tax attorney to advise as to the tax consequences of liquidation under the Internal Bevenue Code of 1954. The attorney prepared a written report and appeared before the bondholders to discuss his conclusions at their meeting on December 19,1957.
(b) Sometime thereafter, the bondholders agreed that plaintiff should be permitted to withdraw'his pro rata share of the assets of the Bliss Properties, the agreement for which (together with the customary general releases) was executed by plaintiff and the trustees on May 22, 1958. Pursuant thereto, plaintiff received certain apartment buildings and other considerations in exchange for the surrender of his bonds in the Bliss Properties which bonds then had a face value of $306,000.
(c) The Commissioner of Internal Bevenue subsequently agreed that the market values of the three apartment buildings were as follows:
Harvard Hall_$1,200, 000
Dunsmere _ 172,600
Blenheim _ 111, 600
Total_$1,484,200
Further agreement was reached that plaintiff, upon the liquidation of his interest in the Bliss Properties, realized a long-term capital gain of $1,027,704.49.
*366 14. (a) For the calendar year 1956 plaintiffs[9] filed a joint Federal income tax return in which they reported a taxable net income of $2,609.45 and an income tax liability of $417.51, which was paid by them within the time allowed by law.
(b) Plaintiffs deducted the expenses listed in finding 11 (a) in their 1955 Federal income tax return.
(c) Upon an examination of the return, the Commissioner of Internal Revenue determined that the amount of $7,980.66 was not a proper deduction.
(d) Under date of July 9, 1958, the Commissioner of Internal Revenue sent to the plaintiffs a statutory notice of deficiency wherein the only adjustment was the disallowance of the said deduction, and the resulting deficiency was determined to be $1,512.32. Plaintiffs paid the deficiency on December 12,1958.
(e) On August 29,1960, plaintiffs filed a claim for refund of said $1,512.32, plus interest paid thereon, on the ground that the Commissioner of Internal Revenue had erroneously disallowed the deduction. The claim for refund was denied by the Commissioner of Internal Revenue by a certified letter dated January 12,1962.
(f) No part of the taxes paid by plaintiffs as aforesaid has been refunded.
(g) Plaintiffs have exhausted their administrative remedies.
(h) The present action was filed January 9, 1964,[10] to recover the deficiency payment of $1,512.32, under the provisions of 28 U.S.C. § 1491, and §§ 162, 212, and 7422(a) of the Internal Revenue Code of 1954.
15. During the years 1953-1955, plaintiff was not engaged in a trade or business.
16. (a) Plaintiff’s action in filing the suit challenging the validity of the will of his half brother created no surprise to the other bondholders of Bliss Properties or to its trustee.
(b) Each of two lawyers who represented parties (or persons) interested in the will suit because of their Bliss Prop *367 erties holdings testified that the filing of the suit came as no surprise to them (or to others interested) because it appeared to all of them as one more phase in plaintiff’s continuing effort to force either a liquidation (termination) of the Bliss Properties trust or a release of his equity in it.[11]
(c) Plaintiff himself testified (1) that success in the will contest would have increased his holdings “from 17 and a fraction to a little over 23%”;[12] (2) that he was advised that “there was some law which set 20% as the amount necessary to liquidate a trust without penalty to the individual recipients”; (3) that his “basic purpose [in filing the suit] was to increase [his] holdings from 17 to better than 20%”; and (4) that if he had prevailed in the will contest, he would have “increased the income, hut decreased the tax * * [13]
17. (a) No challenge of plaintiff’s veracity is involved in the recognition of his stated position as being fundamentally a rationalization.
(!b) The fact is undisputed that success in the will contest would have given him an inheritance worth approximately $100,000.
(c) The further fact is undisputed that plaintiff for years carried on a feud with his brother Arthur which at times assumed the proportions of a personal vendetta. The evidence as a whole warrants the inference that plaintiff was emotionally involved in the attacks on the trust, the trustees, *368 and the managers of Bliss Properties from the time in his childhood when his mother’s sister tried to have the trust declared illegal.
(d) Within the context of the law governing this case (statutes and decided cases), it must be concluded that the origin and purpose of the expenditures here sought to be deducted were capital in nature (to secure a substantial inheritance) .
CONCLUSION OE Law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are not entitled to recover. Their petition is therefore dismissed.

 The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 Plaintiffs also cite: Petschek v. United States, 335 F. 2d 734 (2d Cir. 1964); Locke Manufacturing Cos. v. United States, 237 F. Supp. 80 (D. Conn. 1964); and Smith Hotel Enterprises, Inc. v. Nelson, 236 F. Supp. 303 (E.D. Wis. 1964).

 Finding 17(d).

 The action was, however, soundly based upon a technical question of law and was therefore not frivolous.

 It Ras not been deemed necessary, in view of the conclusion reached, as hereinafter stated, to enter detailed findings pertaining to these contentions or to discuss such details in this opinion.

 Mrs. (Dawn) Bliss is a party to this action only by reason of the filing of a joint income tax return by husband and wife. Inasmuch as the pertinent facts pertain primarily to actions and transactions by the husband, references hereinafter to the plaintiff (or taxpayer) in the singular designate Mr. Bliss.

 If incompetent, she would have been unable to participate with him in real estate transfers, which were essential to his business.

 The face amount of the bonds then outstanding -was $1,515,000, “the remaining $485,000 having been purchased by the Trust and registered in the name of the Trustees.”

 These bonds were not part of the $266,000 in bonds mentioned in finding 2(c).

 This letter advised the bondholders that adoption of the proposed plan of liquidation might result in the imposition of substantial tax liabilities upon the bondholders.

 Bliss v. Shea, 230 F. 2d 82S (D.C. Cir.).

 On the basis of market value, plaintiff’s inheritance would have been of the order of $100,000.

 Taxable income was 17.2 percent of the face value of the bonds ($1,515,000).

 Plaintiffs keep their books and file their Federal income tax returns on the cash basis of accounting and by calendar years. They reside in Florida. The income tax return and the claim for refund here involved were filed with the District Director of Internal Revenue for the District of Florida, at Jacksonville.

 Plaintiffs brought the action in their own right.

 These lawyers were called as witnesses by plaintiff. Their conclusion that the will contest was one more effort by .plaintiff to force termination of the trust or release of his equity in it goes to the essence of plaintiff’s contention that success in the suit would have resulted in “certain advantages in connection with important tax considerations under the Internal Revenue Code of 1954” (as to which he cites §§ 302(b) (2) (C), 333(e) (1) and (2), 351(a), and 368(c)) and was therefore a deductible expense under §§ 162, 212, and 7422(a).

 Plaintiff’s 266 bonds accounted for 17.56 percent of the bonds outstanding. As committee for his mother, whose $40,000 accounted for 2.64 percent additional, his combined voting power would have been 20.20 percent; he did, however, serve with a cotrustee for his mother, wherefore his control of her share was not absolute.

 Plaintiff apparently was under the impression that the trust could be terminated without the payment of a capital gains tax, whereupon release from the corporate income tax would result in appreciable benefits to everyone concerned. ¡He testified: “The arrangement I was striving for, to have them dissolve the trust completely and therefore avoid the tax on the corpus, I think we would have only paid a tax on the amount gained. I don’t know what you call it, it has a more technical name, but we would not have paid a tax on the corpus. As it was I didn’t get the twenty odd percent, so I have had to pay a quarter of a million dollars in taxes in the last three years.”